UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERIC CAPO | No. 18 CR 596<br><br>Judge Thomas M. Durkin |

### MEMORANDUM OPINION AND ORDER

Defendant Eric Capo has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582. R. 60. That motion is denied.

### Background

Capo pled guilty to a conspiracy to illegally import and sell anabolic steroids and to launder the proceeds. Capo had prior convictions for similar conduct and committed the instant offenses while on probation for a prior conviction. The Court sentenced Capo to 60 months imprisonment on October 25, 2019. Capo self-surrendered on January 6, 2020 and his projected release date is March 27, 2024. This means that Capo has served about 18% of his anticipated term of incarceration.

Capo is incarcerated at the United States Penitentiary in Pollock, Louisiana with 1,185 other people. Of those, 623 have been tested during the course of the pandemic, and 17 have tested positive for COVID-19.[1]

---

[1] *See* https://www.bop.gov/coronavirus/ and https://www.bop.gov/locations/institutions/pol/.

**Analysis**

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a term of imprisonment upon a motion of the defendant, "after the defendant has fully exhausted all administrative rights to appeal" and 30 days have passed without the Bureau of Prisons filing a motion on the defendant's behalf. The government concedes that Capo has exhausted his administrative remedies and that the Bureau of Prisons has not pursued his request for early release.

In determining whether release under § 3582 is appropriate, courts are to consider: (1) the factors set forth in 18 U.S.C. § 3553(a); (2) whether "extraordinary and compelling reasons" warrant a reduction in sentence; and (3) whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of establishing his entitlement to relief under this provision. *See United States v. Gold,* 2020 WL 2197839, *1 (N.D. Ill. May 6, 2020) (citing *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020)).

The Sentencing Commission's policy on sentence reduction states that "the court may reduce a term of imprisonment . . . if, after considering [the § 3553(a) factors] . . . the court determines" that: (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g); and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 11B1.13. The Sentencing Commission's policy statement describes four situations constituting "extraordinary and compelling reasons." The first three are

inapplicable here. But the fourth is a catch-all provisions entrusting courts with the discretion to find that any "reason other than . . . the reasons described" in the policy statement also constitutes an "extraordinary and compelling reason" to reduce a sentence. *Id.* cmt. n. 1.

### A. Extraordinary and Compelling Reasons

A motion to reduce a sentence may only be granted on a showing of "extraordinary and compelling reasons." This Court and many others around the country have found that the mere existence of the COVID-19 pandemic in the country generally, or in a particular correctional facility, does not constitute an "extraordinary and compelling reason" to reduce a sentence. *See, e.g., United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Friday*, 16 CR 633 (N.D. Ill. June 16, 2020), R. 101; *United States v. Allegra*, No. 15 CR 243 (N.D. Ill. April 13, 2020), R. 232 at 7 (quoting *United States v. Eberhart*, 2020 WL 1450745, *2 (N.D. Cal. Mar. 25, 2020)); *Gold*, 2020 WL 2197839 at *2; *United States v. Munguia*, 2020 WL 1471741, at *4 (N.D. Tex. Mar. 26, 2020). A contrary finding would imply that all inmates should be released, which is neither appropriate nor feasible. And COVID-19 poses minimal risk of serious health complications to the vast majority of people. However, courts have also found that an extraordinary and compelling reason to reduce an inmate's sentence can arise if the inmate's underlying health condition

makes him particularly vulnerable to serious health complications should he contract COVID-19.

Capo argues that his asthma and history of respiratory illness demonstrate that he is at higher risk for severe illness from COVID-19. But Capo's medical records indicate that his asthma is well-controlled. Capo's medical records from his time in prison over the past six months show that his "lungs [are] clear," he is "breathing normally," and he has "no shortness of breath." R. 63 at 14, 24, 31. He has been prescribed an albuterol inhaler, but his medical records show that he has never suffered an asthma attack.

Capo argues that he suffers from chronic bronchitis. But his medical records show only one period of time when he suffered from bronchitis in the spring of 2017. *See* R. 60 at 52-58 (records from March 28, 2017; April 21, 2017; June 5, 2017). This evidence does not demonstrate a chronic condition. Capo's medical records also indicate a diagnosis of sleep apnea. *See* R. 60. But the Centers for Disease Control does not list sleep apnea as causing increased risk of severe illness from COVID-19.[2]

Capo also argues that he is at increased risk for severe illness because he is obese. He qualified as obese when he entered prison. But according to his medical records, he lost 40 pounds due to increased exercise by March 2020. *See* R. 63 at 24. Capo argues that he has regained that weight, without identifying corroborating medical records. *See* R. 64 at 4-5. Nevertheless, the Court will assume for purposes of

---

[2] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

4

this motion that Capo is obese and that his obesity would be sufficient to demonstrate that there is an extraordinary and compelling reason for Capo to be released, based on the CDC's Guidelines indicating that obesity is a significant risk factor. However, considering the uncertain nature of Capo's weight, these assumptions for the purposes of this motion do not constitute findings by the Court that Capo has demonstrated an extraordinary and compelling reason for release.

### B. Section 3553(a) Factors

Even if Capo could demonstrate an extraordinary and compelling reason for release, the factors in § 3553(a) counsel against it. Those factors "require courts to consider both utilitarian and retributivist principles in imposing sentences [such that] defendants should receive sentences of adequate length relative to the severity of their crimes, and also long enough to make them examples to others who consider committing similar crimes." *United States v. Rainone*, 09 CR 206 (N.D. Ill. June 19, 2020), R. 180 at 6.

The Court first addresses "the nature and circumstances of the offense" and "the kinds of sentences available." 18 U.S.C. § 3553(a)(1), (3), (4). Capo's guidelines range was 70 to 87 months. From any perspective, his sentence of 60 months was lenient considering the danger inherent in the crime of distributing illegal steroids imported from abroad and his recidivist history. There can be no question that the sentence Capo received was just and fit the crime.

Since Capo's original sentence was more than appropriate, reducing it would disrespect the seriousness of his crime and principles of justice. *See* 18 U.S.C. §

5

3553(a)(2)(A). The fact that Capo has served only a small portion of his sentence also means that his early release could diminish the deterrent effect of his original sentence. *Id.* (a)(2)(B). One of the Court's primary concerns at sentencing was general deterrence to the community of body-builders of which Capo is a member. *See* R. 59 at 51. Capo was heavily involved in body-building and many of his sales were to the body-building community. The body-building community is relatively small, meaning many of its members likely are aware of Capo's sentence. *Id.* Reducing Capo's sentence would largely destroy that deterrent effect.

Capo argues that he is not really asking for a release, but just to serve out his sentence on home confinement. The Court does not believe the body-building community will view home confinement nearly as much of a deterrent as prison time. If the Court thought home confinement was an adequate general deterrent, the Court would have imposed it at the time of sentencing.

The Court is equally concerned with the deterrent effect on Capo himself. As the Court noted at sentencing, *see id.* at 51, Capo has already demonstrated a propensity to commit crimes even when he is under close scrutiny of law enforcement, showing the risk of recidivism is high. 18 U.S.C. § 3553 (a)(2)(C). And while Capo argues that his risk of recidivism is low because his crime is three years old and he was permitted to be free on bond during the course of his case, that does not outweigh the fact that Capo has already proven to have a propensity to repeatedly commit crimes. The Court believes that the length of Capo's original sentence is necessary to impart on him the seriousness of his crimes and to create a disincentive for him to

6

commit further crimes when his sentence is complete. The length of Capo's current sentence was to a large degree a product of his repeated criminal conduct. Releasing him when he has served less than 20% of his sentence would undermine the necessary deterrent effect.[3]

Lastly, § 3553(a) requires the Court to consider "the need for the sentence imposed to provide the defendants with needed . . . medical care . . . in the most effective manner." *Id.* (a)(2)(D). Other than the presence of COVID-19, Capo has not made any argument that his health conditions cannot be adequately managed in prison. He has not made any showing that his release is necessary to more effectively address his health conditions.

Therefore, the factors in § 3553(a) suggest that a reduction in Capo's sentence would be inappropriate.

## Conclusion

It may be that Capo's health, in combination with the COVID-19 pandemic, creates an extraordinary and compelling reason to release him early. The Court granted a motion by a defendant who demonstrated similar health conditions. But in that case, the defendant had already served more than 80% of his sentence and was much older than Capo. *See United States v. Shannon*, 2020 WL 3489491 (N.D. Ill. June 26, 2020). By contrast, the Court has denied a motion for release by a defendant of a similar age to Capo with similar health conditions who had served only 24% of

---

[3] To the extent Capo argues that home confinement would decrease the risk of recidivism, the Court notes that Capo's co-defendant ran their steroid distribution operation out of the co-defendant's garage.

7

his sentence. *See United States v. Rogers*, 2020 WL 4816053 (N.D. Ill. Aug. 18, 2020). The Court finds that the concern presented by Capo's health in the context of the pandemic is outweighed by the extent of Capo's crimes, the need to demonstrate respect for justice, and the need to protect the public from future criminal harm. Therefore, Capo's motion [60] is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: October 9, 2020